IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| JOHN S. WESOLEK, DEBORAH J. WESOLEK, JOEL T. JOHNSON, RANDY LINSTEDT, DOUGLAS A. LARSON, DR. ENRIQUE REYES-B, MARIA GEORGINA REYES, LEVI LINDEMANN, STEPHANIE LINDEMANN, MICHAEL P. WAGNER, DANIEL MILLER, KRISTINA MILLER, ROEL TREVINO, TIM PETERSON, JANICE LAU, MIKE TASZAREK, E. BRENT LUNDGREN, GLORIA GACKLE, PETE HILL, KELCEY HILL, KEN ULLMANN, DALE SCHNEIDER, DEBORAH SCHNEIDER, JOHN MCINTOSH, MARGARET MCINTOSH, MERYLE A. WILLERT, JR., JULIE WILLERT, TYLER ROEHL, PAMELA G. KLOOS, JEFFREY T. KLOOS, JUDY KVAALE, CLIFF LARSON, JUDY DVORAZK, MONA THORSTAD, ARLYN LAND, STEVE JOHNSON, LORI JOHNSON, JANET SKINNER, and GEORGE SLIGHT, Individually and On Behalf of All Others Similarly Situated and On Behalf of LAYTON ENERGY WHARTON FUND, LP and LAYTON ENERGY FUND 2, LP, | § § § § § § § § § § § § § § § § § § § § § § § § § § § § § § § § § § § § § § § § § § § | CIVIL ACTION NO. H-12-0063 |
| Plaintiffs, | § § | |
| v. | § § | |
| DANIEL LAYTON, J. CLARKE LEGLER, LAYTON ENERGY TEXAS, LLC, and LAYTON CORPORATION, | § § § § | |
| Defendants. | § § | |

## MEMORANDUM OPINION AND ORDER

Plaintiffs bring this action on their own behalf and as class representatives on behalf of all persons who invested in either the

(1) Wharton Energy Fund or the (2) Layton Energy Fund 2.   The defendants named in this action are Daniel Layton, J. Clarke Legler, Layton Energy Texas, LLC, and Layton Corporation. Plaintiffs' Amended Class Action Complaint (Docket Entry No. 11) asserts claims for violation of the Texas Theft Liability Act, Tex. Civ. Prac. & Rem. Code § 134.003(a), and the Texas Securities Act, Tex. Rev. Civ. Stat. Art. 581-33, and common law claims for fraud, conversion, money had and received, breach of fiduciary duty, and negligence.  Pending before the court are Defendants Layton Energy Texas LLC and Layton Corporation's Motion to Dismiss Plaintiffs' Amended Class Action Complaint (Docket Entry No. 16), and Defendants Daniel Layton and Clarke Legler's Motion to Dismiss Plaintiffs' Amended Class Action Complaint and Joinder in Layton Energy Texas LLC and Layton Corporation's Motion to Dismiss (Docket Entry No. 18).  Also pending is plaintiffs' request for leave to amend if the court decides to grant one or both of the pending motions to dismiss.  For the reasons stated below, the pending motions to dismiss will be granted, plaintiffs' request for leave to amend will be denied, and the claims that plaintiffs have asserted for common law fraud and violation of the Texas Securities Act (arising from misrepresentations made after plaintiffs purchased units in the Funds), conversion, violation of the Texas Theft Liability Act, money had and received, breach of fiduciary duty, and negligence will be dismissed without prejudice, and the claims that plaintiffs have asserted for common law fraud and

-2-

violation of the Texas Securities Act arising from
misrepresentations made before plaintiffs purchased units in the
Funds will be dismissed with prejudice.

## I.  Factual and Procedural Background

## A.   Factual Background

Plaintiffs allege that beginning in 2007 they purchased units
of one or both of two Texas limited partnerships:  Layton Energy
Wharton, LP and Layton Energy Fund 2, LP ("the Funds").  The Funds
were run by Daniel Layton ("Layton") and J. Clarke Legler through
Layton Energy Texas, LLC ("Layton Energy"), and plaintiffs allege
that the units meet the definition of "security" under Tex. Rev.
Civ. Stat. Art. 581-4A.  Plaintiffs allege that

> [t]he Funds were organized to "(a) acquire full or
> partial working interests in selected oil and gas leases
> on which to drill new wells and/or re-enter and re-work
> existing wells for the production of oil and/or gas in
> commercial quantities, (b) acquire full or partial
> working interests in selected oil and gas leases to hold
> and/or develop the leases for resale, (c) acquire royalty
> interests in producing oil and gas properties and
> (d) acquire full or partial working interests in
> producing wells and leases which may have proven
> undeveloped sites available for future drilling . . ."

(Plaintiffs' ACAC, Docket Entry No. 11, p. 9 ¶ 50)[1]  Plaintiffs
allege that to entice potential investors to invest

> Layton personally represented to the investors that they
> would get their initial investment back within one year
> and make three to five times their investment within
> three to five years.  At the time these statements were

_____

[1]Plaintiffs' Amended Class Action Complaint ("Plaintiffs'
ACAC"), Docket Entry No. 11, p. 9 ¶ 50.

made, in 2008, Layton knew these statements to be untrue, or in light of the circumstances in which they were made, misleading.  Likewise, Legler aided Layton in the sale of the partnership units (securities) to the investors. Legler either knew of the falsity of the statements made or was in reckless disregard for the truth of the statements made.

(Id. at 10 ¶ 50.)

Plaintiffs allege that the Layton Energy Wharton Fund LP raised $10,000,000 (Plaintiffs' ACAC, Docket Entry No. 11, p. 10 ¶ 52), and currently has the following eight wells for which it incurred the following acquisition costs:  (1) Miller B2 Chambers County Well, $932,861; (2) HK1 Well, $2,911,544; (3) HK2 Well, $840,622; (4) Casey Heirs 1 Well, $1,067,988; (5) Saenz Well, $325,119; (6) B1 Well, $495,128; (7) LW1 Well, $374,428; and (8) Stovall County Well, $293,250.  Plaintiffs also allege that the fund spent $171,062 acquiring 3D Seismic data.   (Id. ¶ 51.) Regarding these wells, plaintiffs allege that defendants "had the [Miller] B2 Well 'worked over'[; i]n the process of the 'work over', defendants allowed an 'affiliated partner' to fund the money for the work over with the fund owing this affiliated partner of the defendants $1,200,000."   (Id. ¶ 53.)   "Layton reworked the wrong well; according to the geologist and the field operations supervisor it was supposed to have been the B1 well that was worked over."  (Id. at 13 ¶ 64.)  "Defendants refused to produce the HK1 Well due to a dispute between Layton and the operator of the well. Defendants found a new operator for the HK1 Well at a cost of 50% of the working interest in that well.  This was done without the

-4-

knowledge or consent of the Wharton Fund investors." (Id. at 11
¶ 54.)  "Defendants allowed the HK2 Well lease to expire due to
non-production, thereby losing the well for the Wharton Fund and
its investors, as a result of personality differences between
Layton and the well's operator." (Id. ¶ 55.)  "[T]he Wharton Fund
monies that were used to 'drill the Saenz well' were in actuality
taken by Defendants for other non-Wharton Fund purposes. . . [T]he
question remains:  Where is the well?" (Id. ¶ 57.)  "Defendants
did not drill either the LW1 well or the Stovall well, although the
Wharton Fund was charged for the drilling of these wells.  It is
believed that the Wharton Fund monies 'used' to drill these wells
were in actuality used by Defendants for other non-Wharton Fund
purposes." (Id. at 11-12 ¶ 58.)

Plaintiffs allege that the Layton Energy Fund 2 raised about
$3,500,000, and that $375,000 of that money was used to acquire the
following three wells:  Well 205-1, Well 205-3, Well 206-1.
(Plaintiffs' ACAC, Docket Entry No. 11, p. 12 ¶ 59)  Plaintiffs
allege that "[t]he remaining $2,974,625 of the Layton Energy Fund
2 monies is unaccounted for and, on information and belief, has
been absconded by Defendants for non-Layton Energy Fund 2
purposes." (Id.)

Plaintiffs allege on information and belief that "Layton and
Legler took monies from the Wharton Fund and the Layton Energy
Fund 2 to put in other projects Layton and Legler were running"

(Plaintiffs' ACAC, Docket Entry No. 11, p. 12 ¶ 60); "Defendants used the Funds wells as collateral and allowed liens to be placed on the wells . . . [and that] the general counsel of Layton Energy . . . is now giving the investors wells away or letting the leases expire with no concern towards the investors."   (<u>Id.</u> ¶ 61.) Plaintiffs allege that

> [o]n numerous occasions, Layton personally met with investors and investors-to-be promising that investors would see a return of their principle within one year from the date of the funds' inception with a 300 to 500 percent return on their investment within three to five years.   Layton specifically made these promises to plaintiffs and investors Levi Lindemann, Nahum Daniels and Al Vanderlaan, among others. Initially, Layton would respond to investors' inquiries regarding the status of the funds and provide period letters to the investors regarding their funds. Beginning in the summer of 2010, Layton discontinued responding to investors' inquiries. Prior to discontinuing responding to investors' requests for information, Layton told Levi Lindemann that the funds owed Layton money. Additionally, Layton personally told plaintiffs and investors Levi Lindemann, Nahum Daniels and Al Vanderlaan, in the Summer of 2010, among others, that he was working on a fracking company deal that was soon to go public (nominal defendant Platinum Energy Solutions, Inc.) and that shares of this company would be placed into the funds to make the investors whole.

(<u>Id.</u> ¶ 62.)  Plaintiffs allege that

> [s]ince the existence of the Funds, Layton has allowed lease interests to expire, failed to pay vendors and service providers for work done on the leases, failed to abide by state and federal regulations, failed to acquire properties as represented and engaged in self-dealing to the detriment of the Fund.   This despite repeated representations to the investors and Broker-Dealers that properties were being acquired and wells drilled for the Funds with the investor's monies.

(<u>Id.</u> at 13-14 ¶ 65.)  Plaintiffs allege that

> [s]ince inception and throughout the existence of the
> Funds, Layton has acted in a fashion that disregards the
> corporate entities and structure of Layton Energy, LLC,
> Layton Corporation, Platinum Energy Solutions, Inc.,
> Layton Energy Wharton, LP and Layton Energy Fund 2, LP,
> and treats them as a single business enterprise.

(Id. at 16 ¶ 70.)

"Plaintiffs seek recision of the sale of their limited partnership units, recovery of all sums invested in Wharton Energy Fund and Layton Energy Fund 2 on behalf of themselves and the members the classes." (Plaintiffs' ACAC, Docket Entry No. 11, p. 16 ¶ 72)

## B.   Procedural Background

On December 21, 2011, plaintiffs John S. Wesolek, Deborah J. Wesolek, Joel T. Johnson, Randy Linstedt, Douglas A. Larson, Dr. Enrique Reyes-B, Maria Georgina Reyes, Levi Lindemann, Stephanie Lindemann, Michael P. Wagner, Daniel Miller, Kristina Miller, Roel Trevino, and Tim Peterson, acting individually and on behalf of all others similarly situated, filed Plaintiffs' Original Class Action Petition in the 129th Judicial District Court of Harris County, Texas, against defendants Daniel Layton, J. Clark Legler, Layton Texas, LLC, Platinum Energy Solutions, Inc., and Layton Corporation.   The case was captioned Wesolek, et al. v. Layton, et al., and given case number 2011-76468.   The plaintiffs' Original Class Action Petition asserted claims for common law fraud, conspiracy, conversion, violation of the Texas Theft

-7-

Liability Act, and money had and received.[2]  Plaintiff's prayer for relief sought "recovery of all sums invested in Wharton Energy Fund and Layton Energy Fund 2 on behalf of themselves and the members of the classes."[3]

On January 6, 2012, defendant Platinum Energy Solutions, filed a Notice of Removal (Docket Entry No. 1) asserting that "[t]his action is removable under the provisions of the Class Action Fairness Act (CAFA), 28 U.S.C. § 1332(d), and 28 U.S.C. § 1453(b),"[4] and that "[a]ll elements for removal of the instant action under CAFA are met."[5]  On January 10, 2012, motions to dismiss were filed by defendants Layton Corporation and Layton Energy Texas, LLC (Docket Entry No. 4), and by defendants Layton and Legler (Docket Entry No. 6). On January 11, 2012, defendant Platinum Energy Solutions also filed a motion to dismiss (Docket Entry No. 9).  The defendants sought dismissal on grounds that the plaintiffs lacked standing to bring their claims because all the injuries for which they sought relief occurred solely to the Funds.

On January 25, 2011, citing Federal Rule of Civil Procedure 15(a)(1)(B), plaintiffs filed Plaintiffs' ACAC, Docket Entry No. 11.   Plaintiffs' ACAC added a number of new individual

---

[2]Plaintiffs' Original Class Action Petition, Exhibit A to Notice of Removal, Docket Entry No. 1.

[3]Id. at 12 ¶ 72.

[4]Notice of Removal, Docket Entry No. 1, p. 2 ¶ V.5.

[5]Id. at 3 ¶ V.7.

plaintiffs, added new allegations that the claims asserted in this action are being brought not only on behalf of the plaintiffs individually and all others similarly situated, but also on behalf of Layton Energy Wharton Fund, LP and Layton Energy Fund 2, LP, derivatively.  Plaintiffs' ACAC also added new claims for violation of the Texas Securities Act and for breach of fiduciary duty, and omitted the claim for conspiracy.[6]  Plaintiffs amended their prayer for relief to seek "recision of the sale of their limited partnership units, recovery of all sums invested in Wharton Energy Fund and Layton Energy Fund 2 on behalf of themselves and the members of the classes."[7]

On February 8, 2012, the pending motions to dismiss the plaintiffs' ACAC were filed by defendants Layton Energy Texas, LLC and Layton Corporation (Docket Entry No. 16), and by defendants Layton and Legler (Docket Entry No. 18).  On February 20, 2012, defendant Platinum Energy Solutions filed its motion to dismiss the plaintiffs' ACAC (Docket Entry No. 21), and on March 2, 2012, the court granted Platinum Energy Solutions motion to dismiss (Docket Entry No. 25).  The plaintiffs have filed responses to the pending motions to dismiss (Docket Entry Nos. 22 and 23), and the defendants have filed replies to the plaintiffs' responses (Docket Entry Nos. 26 and 27).  On April 6, 2012, the court granted the

---

[6]Plaintiffs' ACAC, Docket Entry No. 11, p. 20.

[7]Id.

parties' Agreed Motion to Stay Pending Determination of Defendants' Motions to Dismiss (Docket Entry No. 29).

## II.  Analysis

Defendants Layton Energy and Layton Corp. seek dismissal of the claims asserted in this action for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6), and for failure to plead fraud with particularity as required by Federal Rule of Civil Procedure 9(b).  In addition, Layton Energy and Layton Corp. join in and adopt the motion to dismiss filed by Layton and Legler.[8]  Defendants Layton and Legler seek dismissal for lack of subject matter jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(1), and for failure to comply with procedural requirements for bringing a derivative class action suit as required by Federal Rule of Civil Procedure 23.1 and applicable state law.  In addition, Layton and Legler join in and adopt the motion to dismiss filed by Layton Energy and Layton Corp.[9]

## A.    Rule 12(b)(1):  Lack of Subject Matter Jurisdiction

Defendants Layton and Legler argue that the claims alleged against them in this action should be dismissed pursuant to

---

[8]Defendants Layton Energy Texas LLC and Layton Corporation's Motion to Dismiss Plaintiffs' Amended Class Action Complaint ("Layton Energy and Layton Corp.'s Motion to Dismiss"), Docket Entry No. 16.

[9]Defendants Daniel Layton and Clarke Legler's Motion to Dismiss Plaintiffs' Amended Class Action Complaint and Joinder in Layton Energy Texas LLC and Layton Corporation's Motion to Dismiss (Layton's and Legler's Motion to Dismiss), Docket Entry No. 18.

Rule 12(b)(1) for lack of subject matter jurisdiction (1) because the claims asserted in the original petition filed in state court seek relief for harms suffered by the Funds that plaintiffs have no standing to assert; (2) because the plaintiffs have no standing to assert the claims alleged in their original petition, the court never acquired subject matter jurisdiction; and (3) because the court never acquired subject matter jurisdiction, the plaintiffs had no right to file their ACAC, which defendants acknowledge does allege at least two direct claims that plaintiffs do have standing to assert (i.e., claims for common law fraud and for violation of the Texas Securities Act).  For the reasons explained below, the court is persuaded that plaintiffs' claims for common law fraud and for violation of the Texas Securities Act (arising from misrepresentations made after plaintiffs purchased units in the Funds), and for conversion, violation of the Texas Theft Liability Act, money had and received, breach of fiduciary duty, and negligence are subject to dismissal pursuant to Rule 12(b)(1) for lack of subject matter jurisdiction.

    1.   <u>Standard of Review</u>

A motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(1) for lack of subject matter jurisdiction tests the court's statutory or constitutional power to adjudicate the case.  <u>Home Builders Association of Mississippi, Inc. v. City of Madison, Miss.</u>, 143 F.3d 1006, 1010 (5th Cir. 1998).  "The burden of proof for a

Rule 12(b)(1) motion to dismiss is on the party asserting jurisdiction." Ramming v. United States, 281 F.3d 158, 161 (5th Cir. 2001), cert. denied sub nom. Cloud v. United States, 122 S.Ct. 2665 (2002). In examining a Rule 12(b)(1) motion, the district court can consider matters of fact that may be in dispute. "Lack of subject matter jurisdiction may be found in any one of three instances: (1) the complaint alone; (2) the complaint supplemented by undisputed facts evidenced in the record; or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts." Id. (citing Barrera-Montenegro v. United States, 74 F.3d 657, 659 (5th Cir. 1996)). Dismissal on jurisdictional grounds alone is not on the merits. Id. (citing Hitt v. City of Pasadena, 561 F.2d 606, 608 (5th Cir. 1977) (per curiam)). When a Rule 12(b)(1) motion is filed together with other Rule 12 motions, the court should address the jurisdictional attack before addressing any attack on the merits. Id.

    2.  Applicable Law

"[S]tanding is an essential and unchanging part of the case-or-controversy requirement of Article III." Lujan v. Defendants of Wildlife, 112 S.Ct. 2130, 2136 (1992). "Standing requires, at a minimum, three elements: injury in fact, a 'fairly traceable' causal link between that injury and the defendant's conduct, and the likelihood that the injury will be 'redressed by a favorable decision.'" Cadle Co. v. Neubauer, 562 F.3d 369, 371 (5th Cir.

2009) (quoting Lujan, 112 S.Ct. at 560-61).   "A defect in Article III standing is a defect in subject-matter jurisdiction." Id. at 374.   "Standing is a question of law" for the court to decide.   Friends of St. Francis Xavier Cabrini Church v. Federal Emergency Management Agency, 658 F.3d 460, 466 (5th Cir. 2011).   In deciding questions of law involving partnerships, including standing, applicable state law governs.   See Crocker v. Fed. Deposit Insurance Corp., 826 F.2d 347, 349 (5th Cir. 1987), cert. denied, 108 S.Ct. 1075 (1988).

"The general test for standing in Texas requires that there '(a) shall be a real controversy between the parties, which (b) will be actually determined by the judicial declaration sought.'"   See Nootsie, Ltd. v. Williamson County Appraisal District, 925 S.W.2d 659, 661 (Tex. 1996) (quoting Board of Water Engineers v. City of San Antonio, 283 S.W.2d 722, 724 (1955)). Claimants bear the burden of alleging facts that affirmatively demonstrate a court's jurisdiction to hear a case.   See Tex. Association of Business v. Tex. Air Control Board, 852 S.W.2d 440, 446 (Tex. 1993) ("Because standing is a component of subject matter jurisdiction, we consider TAB's standing under the same standard by which we review subject matter jurisdiction generally.   That standard requires the pleader to allege facts that affirmatively demonstrate the court's jurisdiction to hear the cause.").   See also Asshauer v. Wells Fargo Foothill, 263 S.W.3d 468, 473 (Tex. App. — Dallas 2008, pet. denied) ("Standing as a component of

-13-

subject matter jurisdiction, cannot be presumed, and the burden of alleging facts affirmatively showing the trial court's subject matter jurisdiction lies squarely with [the plaintiffs].").  "Only the person whose primary legal right has been breached may seek redress for an injury." Asshauer, 263 S.W.3d at 471 (citing Nobles v. Marcus, 533 S.W.2d 923, 927 (Tex. 1976) ("Without breach of a legal right belonging to the plaintiff no cause of action can accrue to his benefit.")).

Under Texas law a partnership is an entity distinct from its partners and has the power to sue and be sued in its own name. See Tex. Bus. Org. Code § 152.056 ("A partnership is an entity distinct from its partners."). See also In re Allcat Claims Service, L.P., 356 S.W.3d 455, 463-65 (Tex. 2011) (recognizing that under Texas law a partnership is an entity legally distinct from its partners for most purposes). Unless there is an agreement to the contrary, each partner has equal rights in the management and conduct of the business of a partnership. See Tex. Bus. Org. Code § 152.203. With respect to limited partnerships, a general partner acting with authority has the capacity to bring a suit in the name of the limited partnership, but only when a majority-in-interest of the partners agree to such action. See Tex. Bus. Org. Code § 152.209.

> A limited partner may bring an action in a court on behalf of the limited partnership to recover a judgment in the limited partnership's favor if:
>
> > (1) all general partners with authority to bring the action have refused to bring the action; or

-14-

> (2) an effort to cause those general partners to bring the action is not likely to succeed.

Tex. Bus. Org. Code § 153.401.  In such a situation "the plaintiff must be a limited partner when the action is brought," Tex. Bus. Org. Code § 153.402, and "the complaint must contain with particularity:  (1) the effort, if any, of the plaintiff to secure initiation of the action by a general partner; or (2) the reasons for not making the effort."  Tex. Bus. Org. Code § 153.403.  See also Federal Rule of Civil Procedure 23.1 (establishing similar requirements for pleading with particularity any effort to obtain desired action from appropriate authority, or the reasons for not obtaining the action or making the effort).

A limited partner in Texas may have standing to pursue two different types of claims against the general or controlling partners of a limited partnership:  (1) direct claims brought on behalf of himself or a class of similarly situated individuals; or (2) derivative claims brought on behalf of the partnership itself. See Mallia v. PaineWebber, Inc., 889 F.Supp. 277, 281 (S.D. Tex. 1995) (citing Lenz v. Associated Inns and Restaurants Company of America, 833 F.Supp. 362, 378 (S.D.N.Y. 1993), and Curley v. Brignoli, Curley & Roberts Associates, 915 F.2d 81 (2d Cir. 1990), cert. denied, 111 S.Ct. 1430 (1991)).  The nature of a limited partner's suit is often critical to an analysis of subject matter jurisdiction because in a derivative action brought by a limited partner, the limited partnership is an indispensable party, while

-15-

in a direct action brought by a limited partner either individually or as a representative of a class, the limited partnership is not an indispensable party.  <u>Id.</u> at 282 (citing <u>Lenz</u>, 833 F.Supp. at 378-79).  <u>See also</u> <u>Curley</u>, 915 F.2d at 85-87 (when a plaintiff's claims are direct or class action-type claims, they do not require the partnership's joinder).

    3.  <u>Application of the Law to the Facts</u>

Asserting that the claims asserted in the plaintiff's original state court petition seek redress only for harms suffered by the Funds, defendants argue that "the only persons who would have standing to directly bring these claims are the Funds."[10] Defendants argue that plaintiffs are unable to amend their original petition to add new claims that they have standing to assert because "Rule 15 of the Federal Rules of Civil Procedure does not permit plaintiffs to create standing when none ever existed."[11] Alternatively, defendants argue that plaintiffs' ACAC fails to establish standing to assert derivative claims because the ACAC fails to satisfy the standards for bringing a derivative action provided by either Federal Rule of Civil Procedure 23.1 or § 153.403 of the Texas Business Organizations Code.

---

[10]<u>Id.</u> at 9 ¶ 12.

[11]Layton's and Legler's Motion to Dismiss, Docket Entry No. 18, p. 12 ¶ 16.

-16-

      (a)   Subject Matter Jurisdiction Exists for the Court to
             Consider the Plaintiffs' Amended Complaint

Asserting that plaintiffs lacked standing to bring the claims alleged in their original petition because "[p]laintiffs are merely investors in the Funds, in the form of limited partners," defendants argue that plaintiffs are unable to amend their pleading to establish standing either "[b]y adding the Funds to the caption in the Amended Petition,"[12] in an effort to add new claims that plaintiffs have standing to bring derivatively, or by adding new claims that the plaintiffs have standing to bring individually, i.e., claims for common law fraud and violation of the Texas Securities Act arising from misrepresentations that induced plaintiffs to purchase their partnership units.[13]  Citing TXCAT v. Phoenix Group Metals LLC, No. H-10-0344, 2010 WL 5186824 (S.D. Tex. Dec. 10, 2010), Summit Office Park, Inc. v. United States Steel Corp., 639 F.2d 1278 (5th Cir. 1981), Federal Recovery Services, Inc. v. United States, 72 F.3d 447 (5th Cir. 1996), and Aetna Casualty & Surety Co. v. Hillman, 796 F.2d 770 (5th Cir. 1986), defendants argue that "[t]he Fifth Circuit has a well-defined body of law that prohibits plaintiffs to amend a case to maintain an action when the plaintiff *never* had standing to begin with."[14]

---

[12] Id. at 9-10 ¶ 12.

[13] See id. at 6 ¶ 2.

[14] Id. at 12 ¶ 16.

In _TXCAT_ an unincorporated business brought suit in state court for a variety of business torts.  Defendants removed the action to federal court on the basis of diversity jurisdiction. Defendants then moved for summary judgment on grounds that the plaintiff lacked standing to sue the defendants because plaintiff did not legally exist either when it filed the lawsuit, or when the actions complained of occurred.  _Id._ at *2.  Plaintiff filed a response stating that it would resolve the standing issue by filing a motion for leave to file an amended complaint.  Attached to the plaintiff's response was a proposed pleading submitted by Robert Flores d/b/a TXCAT ("Flores"), which for the first time stated that the suit was being brought by "Robert Flores Individually and d/b/a TXCAT, an unincorporated business at the time of the events leading up to this suit."  _Id._ at *3.  Plaintiff's motion to amend was denied because the deadline for amending pleadings had passed, plaintiff failed to show good cause for late amendment, and the amendment would be futile.  _Id._  Defendants argued — and the court agreed — that a plaintiff who lacks standing may not amend a complaint to substitute a new plaintiff for the purpose of curing a lack of jurisdiction.  _Id._  The court explained that "[c]ourts can 'remedy _inadequate jurisdictional allegations_, but not _defective jurisdictional facts._'"  _Id._ at *4 (citing _inter alia_ Fed. R. Civ. P. 15(a), 28 U.S.C. § 1653, and _Whitmire v. Victus Limited T/A Master Design Furniture_, 212 F.3d 885, 888 (5th Cir. 2000)).

-18-

Like TXCAT, each of the other cases on which defendants rely stands for this well-established principle, i.e., that amendments to the pleadings can remedy inadequate jurisdictional allegations, but not defective jurisdictional facts. See Newman-Green, Inc. v. Alfonzo-Larrain, 109 S.Ct. 2218, 2222 (1989) (recognizing the existence of federal jurisdiction ordinarily depends on the facts as they exist when the complaint is filed, and that 28 U.S.C. § 1653 allows courts to remedy inadequate jurisdictional allegations, but not defective jurisdictional facts).

Neither TXCAT nor any of the other cases on which defendants rely involves facts that are analogous to the facts of this case, and for that reason the court does not find these cases to be controlling or persuasive. Because defendants acknowledge that plaintiffs are limited partners in the Funds,[15] because § 153.401 of the Texas Business Organizations Code allows limited partners to assert derivative claims to recover a judgment in the limited partnership's favor for harms caused to the partnership, because Texas law does not preclude limited partners from asserting direct claims to recover a judgment in their own favor for harms caused to them individually, because the plaintiffs filed their ACAC as a matter of right pursuant to Federal Rule 15(a), and because federal jurisdiction in this case rests on the Class Action Fairness Act, 28 U.S.C. § 1332(d), and 28 U.S.C. § 1453(b), the court is not

---

[15]Id. at 6 § 2.

persuaded that plaintiffs' ACAC should be dismissed for lack of subject matter jurisdiction even if the plaintiffs lacked standing to seek direct relief for the derivative claims alleged in their original state court petition.  See Whitmire, 212 F.3d at 888.

At issue in Whitmire was whether the district court abused its discretion in refusing to allow the plaintiff to amend her complaint to allege an alternate basis for subject matter jurisdiction after the court granted summary judgment for defendant on plaintiff's federal claims.  In holding that the district had abused its discretion, the Fifth Circuit distinguished between "technical or formal amendments" that remedy defective jurisdictional allegations, and more substantive amendments that attempt to remedy defective jurisdictional facts.  The court concluded that 28 U.S.C. § 1653 permits the former but not the latter.  The Fifth Circuit observed that the plaintiff "did not propose to add any new causes of action or new parties, nor did she seek to introduce any new substantive facts to the case." 212 F.3d at 887.  Although defendants characterize plaintiffs' ACAC as an improper attempt to establish standing by adding new direct causes of action and by adding the Funds as new, indispensable parties needed to support the derivative causes of action alleged in the original petition, the court is not persuaded that plaintiffs' ACAC represents an improper attempt to add new causes of action or new parties for the purpose of establishing standing where none previously existed.  Since defendants argue that the plaintiffs'

-20-

original petition asserts causes of action that are properly characterized as derivative, the court is not persuaded that the derivative claims alleged in plaintiffs' ACAC are new claims, and since derivative claims are by definition claims that belong to the Funds, the court is not persuaded that the addition of the Funds to the caption represents an attempt to add a new party for the purpose of creating jurisdiction where none previously existed. See Bankston v. Burch, 27 F.3d 164, 168 (5th Cir. 1994) ("It is undisputed that the partnership itself was never named as a party in this case, either in state or federal court.   That does not control our jurisdictional inquiry, however.   The inquiry into the existence of complete diversity requires considering the citizenship even of absent indispensable parties.").   Accordingly, the court concludes that the amendments offered in plaintiffs' ACAC represent an attempt to remedy inadequate jurisdictional allegations, not defective jurisdictional facts.

> (b) Plaintiffs Lack Standing to Assert Derivative
>     Claims

Asserting that "[n]owhere in the Amended Complaint do the Plaintiffs state which claims they intend to bring directly, nor which they intend to bring derivatively,"[16] defendants argue that all but two of the claims asserted in plaintiffs' ACAC are subject to dismissal for lack of standing because they are claims that must

---

[16]Id. at 6 ¶ 1.

-21-

be brought derivatively on behalf of the Funds.  Defendants explain that the plaintiffs lack standing to bring derivative claims because plaintiffs are seeking relief that only the Funds are entitled to receive, and have failed to allege that they have satisfied "the preconditions for derivative standing, which are that they made a demand upon the Funds, or that making such a demand is excused by futility."[17]

In response plaintiffs argue that defendants' contention that plaintiffs have suffered no "injury in fact" is incorrect because "[t]hey have invested money in two limited partnerships expecting a return of and on their investment.  Instead, plaintiffs have neither received a return of their investment or a return on their investment.  This is clearly an 'injury in fact.'"[18]  Plaintiffs explain that they

> individually lost their investment.  That is an individual injury.  The way the Plaintiffs lost their investment is detailed in Defendants' motion to dismiss in paragraph 13 at pp 10-11.
>
> In addition to individual claims, Plaintiffs seek to bring suit on behalf of Layton Wharton Energy Fund, LP

---

[17]Id. at 6 ¶ 2.  Defendants argue that the two claims that plaintiffs have standing to bring directly on their own behalf, i.e., claims for common law fraud and violation of the Texas Securities Act, are subject to dismissal pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to plead fraud with particularity.  This argument is addressed in § II.B.3, below.

[18]Plaintiffs' Response to Defendants Daniel Layton and Clarke Legler's Motion to Dismiss Plaintiffs' Amended Class Action Complaint and Joinder in Layton Energy Texas LLC and Layton Corporation's Motion to Dismiss ("Plaintiffs' Response to Layton and Legler"), Docket Entry No. 22, p. 3 ¶ 4.

and Layton Energy Fund 2, LP derivatively. Should the Court determine Defendants to be correct, Plaintiffs request an opportunity to amend their complaint to satisfy the requirements of Fed. R. Civ. P. 23.1.[19]

> **(1)  Plaintiffs' Claims Seeking Relief for Loss of Investment Value Are Claims that Must Be Brought Derivatively on Behalf of the Funds**

Plaintiffs fail to cite any law or legal authority in support of their contention that loss of the value of their investment in the Funds provides them standing to bring claims against the defendants directly as opposed to derivatively. Defendants argue and the court agrees, that Texas law requires plaintiffs to bring all such claims derivatively. See Nausler v. Coors Brewing Co., 170 S.W.3d 242, 250 (Tex. App. — Dallas 2005) (rejecting plaintiffs' contention that limited partners are able to bring a direct action for loss of value in the partnership); Asshauer, 263 S.W.3d at 471-74 (Tex. App. — Dallas 2008, no pet.) (citing then existing Texas Revised Limited Partnership Act in support of decision to deny standing to class of partners alleging that they were fraudulently induced to invest in a sham partnership and that their investment was fraudulently misappropriated by managing partner).

The dispute in Nauslar involved the disapproval by Coors Brewing Co. of a proposed consolidation between Willow, a limited partnership, and Miller. Nauslar, individually, did not have a direct ownership interest in Willow. However, Nauslar Investments,

---

[19]Id. at 3-4 ¶¶ 5-6.

-23-

L.L.C., which Nauslar owned entirely, was a limited partner in
Willow.  Id. at 247.  Nauslar presented a proposed consolidation
for Coors' approval, but Coors rejected the deal and according to
Nauslar, Coors' rejection caused losses to Willow's value.  Id.
Nauslar and Nauslar Investments, L.L.C. filed suit individually and
on behalf of Willow, but sought recovery only for Nauslar
individually and not for Willow.  Id. at 248.  Like plaintiffs
here, Nauslar argued that he had standing because he was
"personally aggrieved" by and suffered "direct injury" from
defendants' actions.  Id. at 250.  Since Willow, as the limited
partnership, was the entity who suffered the direct injury from the
harm to the limited partnership's worth, the court concluded that
Nauslar did not have a separate, individual right of action for
injuries to the limited partnership that diminished the value of
his ownership interest in the limited partnership, and that any
loss to Nauslar was "indirect to and duplicative of" the limited
partnership's right of action.  Id. at 251.  The court explained
that "[t]he right of recovery is Willow's right alone, even though
the economic impact of the alleged wrongdoing may bring about
reduced earnings, salary or bonus."  Id.  Asshauer involved a
similar situation in which the court held that limited partners
have no standing to assert claims seeking personal relief for harms
caused to the limited partnership.

In deciding Nauslar and Asshauer the courts focused on the
injuries suffered directly by the limited partnerships, and the

courts decided that the limited partnerships were the proper entities to bring suit. Here, plaintiffs similarly seek personal relief for damages properly belonging to the limited partnerships, i.e., the Funds. Plaintiffs allege that the Funds overpaid for services, lost property rights, failed to acquire property and services, had principal diverted outside the Funds, had property rights encumbered, and were defrauded. Plaintiffs contend that their investments in the limited partnerships were "put into other projects Layton and Legler were running."[20] These damages, although cast as personal damages, belong to the limited partnerships. See Nauslar, 170 S.W.3d at 250. Although plaintiffs' allegations, if true, may amount to an egregious tale of mismanagement or deception, the court declines plaintiffs' invitation to alter the clear language of either the Texas Business Organizations Code or analogous Texas cases to afford them standing to sue. See Asshauer, 263 S.W.3d at 474. Accordingly, the court concludes that claims arising from loss of the value of plaintiffs' investment in the Funds belong not to the plaintiffs individually, but to the Funds, and that under Texas law the plaintiffs must assert such claims derivatively on behalf of the limited partnerships, not individually on their own behalf or as representatives of a class.

Defendants contend that the only claims asserted in plaintiffs' ACAC that the plaintiffs may bring directly on their

---

[20]Plaintiffs' ACAC, Docket Entry No. 11, p. 12 § 60.

own behalf as opposed to derivatively on behalf of the Funds are the claims for common law fraud and violations of the Texas Securities Act arising from misrepresentations made before the plaintiffs purchased their units in the Funds.[21] Plaintiffs neither dispute this contention nor explain why any of the other claims that they have asserted for conversion, violation of the Texas Theft Liability Act, money had and received, breach of fiduciary duty, negligence, and for common law fraud and violation of the Texas Securities Act arising from misrepresentations made after the plaintiffs had invested in the Funds are claims that seek redress for harms suffered by the plaintiffs individually as opposed to harms suffered by the Funds. See Wingate v. Hajdik, 795 S.W.2d 717, 719 (Tex. 1990) ("[a] corporate stockholder cannot recover damages personally for a wrong done solely to the corporation, even though he may be injured by that wrong"); Murphy v. Campbell, 964 S.W.2d 265, 268 (Tex. 1997) (recognizing that under Texas law a stockholder has standing to bring a direct action if the aggrieved stockholder has suffered an "individual cause of action" that is "separate" from the corporation's); and 7547 Corp. v. Parker & Parsley Development Partners, L.P., 38 F.3d 211, 221-22 (5th Cir. 1994) (acknowledging that Wingate and Murphy involved shareholders bringing direct actions against corporations, but concluding that

---

[21]Layton's and Legler's Motion to Dismiss, Docket Entry No. 18, p. 6 ¶ 2 ("new claims, for which investors apparently do have standing . . . are for violation of the Texas Securities Act and for common law fraud, both based on misrepresentations allegedly made before the investors made their investments in the funds").

existence of a Texas statute allowing limited partners to sue other partners derivatively on behalf of the partnership suggests that Wingate's rationale applies to limited partnerships as well as to corporations).   Accordingly, the court concludes that the claims plaintiffs have asserted for conversion, violation of the Texas Theft Liability Act, money had and received, breach of fiduciary duty, negligence, and for common law fraud and violation of the Texas Securities Act arising from misrepresentations made after the plaintiffs had invested in the Funds are claims that the plaintiffs can only bring derivatively on behalf of the Funds.

> **(2)   Plaintiffs Have Not Satisfied Preconditions for Bringing Derivative Claims and Plaintiffs' Request for Leave to Amend Lacks Merit**

Defendants argue that plaintiffs' ACAC is insufficient to establish plaintiffs' standing to bring any derivative claims because

> Plaintiffs do not comply with the requirement under the Texas Business Organizations Code that derivative action plaintiffs must set forth "with particularity" those efforts requesting that the general partner take suitable action or why such efforts were not undertaken.  Tex. Bus. Org. Code Ann. § 153.403 (Vernon 2010).  The Amended Complaint nowhere alleges particular facts showing what was requested, when, of whom, what response was received, etc., or why such demand would be futile.  Plaintiffs also do not comply with Federal Rule of Civil Procedure 23.1 which requires that derivative complaints be verified, and allege "that the action is not a collusive one to confer jurisdiction that the court would otherwise lack."  Fed. R. Civ. P. 23.1(b).[22]

---

[22]Layton's and Legler's Motion to Dismiss, Docket Entry No. 18, p. 7 § 5.

Plaintiffs do not dispute defendants' contention that they have failed to comply with the requirements of either the Texas Business Organizations Code or Rule 23.1 for asserting derivative claims.  Instead, plaintiffs merely assert that

> [i]n addition to individual claims, Plaintiffs seek to bring suit on behalf of Layton Wharton Energy Fund, LP and Layton Energy Fund 2, LP derivatively.  Should the Court determine Defendants to be correct, Plaintiffs request an opportunity to amend their complaint to satisfy the requirements of Fed. R. Civ. P. 23.1.[23]

Plaintiffs fail to cite any law or legal authority in support of their request for leave to amend.

Plaintiffs have already filed an original petition and an amended complaint.  Plaintiffs' ACAC purports to assert derivative claims, but plaintiffs do not dispute that their ACAC fails to satisfy the federal and state law requirements for pleading derivative claims.  Instead, in the event that the claims asserted in their ACAC are subject to dismissal, plaintiffs request leave to amend.  Plaintiffs have not provided the court a proposed second amended class action complaint, have not explained what, if any, additional facts plaintiffs would allege in such an amended complaint, and have not explained why such facts are not alleged in the ACAC.  Under these circumstances the court is not persuaded that plaintiffs should receive a second opportunity to replead their claims.  See McKinney v. Irving Independent School Dist., 309 F.3d 308, 315 (5th Cir. 2002), cert. denied, 123 S.Ct. 1332 (2003)

---

[23]Plaintiffs' Response to Layton and Legler, Docket Entry No. 22, p. 4 ¶ 6.

(finding no abuse of discretion in the district court's denial of request for leave to amend where the plaintiffs failed to submit a proposed amended complaint together with a request for leave to amend and failed to alert the court to the substance of any proposed amendment). Accordingly, plaintiffs' request for leave to amend to satisfy the requirements for pleading derivative claims will be denied, and the derivative claims that plaintiffs have asserted in their ACAC for common law fraud (arising from misrepresentations made after they purchased their Fund units), conversion, violation of the Texas Theft Liability Act, money had and received, breach of fiduciary duty, and negligence will be dismissed for lack of standing and for failure to satisfy either the federal or state law preconditions for bringing derivative actions.

**B.    Rule 12(b)(6):  Failure to State a Claim**

Defendants argue that plaintiffs' claims for common law fraud arising from misrepresentations that induced them to purchase Fund units and for violation of the Texas Securities Act are subject to dismissal pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim for which relief may be granted because these claims are grounded in fraud, and plaintiffs have failed to plead fraud with particularity as required by Federal Rule of Civil Procedure 9(b).[24]  Plaintiffs acknowledge that "[t]his is a fraud

_____

[24]Layton Energy and Layton Corp.'s Motion to Dismiss, Docket Entry No. 16.

-29-

case with a general pattern of conduct by Defendants,"[25] and respond:

> Plaintiff's Amended Complaint specifically states who:
> Daniel Layton, J. Clarke Legler, Layton Energy Texas LLC
> and Layton Corporation; what: defendants enticed
> plaintiffs to invest with them and keep their investment
> with them; when: in 2007 and through 2011; where: In
> Texas, North and South Dakota, Florida, California and
> New York, to name a few; how: in person, through
> telephone calls, and the mail; why: to get Plaintiffs
> money.  Further, Defendants assert that Plaintiffs did
> not adequately plead reliance or resulting injury.
> Nonsense, Plaintiffs invested their money (reliance) and
> have received no return (resulting injury).[26]

## 1.   Standard of Review

A motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6) for failure to state a claim for which relief may be granted tests the formal sufficiency of the pleadings and is "appropriate when a defendant attacks the complaint because it fails to state a legally cognizable claim." Ramming v. United States, 281 F.3d 158, 161 (5th Cir. 2001), cert. denied sub nom Cloud v. United States, 122 S.Ct. 2665 (2002).  The court must accept the factual allegations of the complaint as true, view them in a light most favorable to the plaintiff, and draw all reasonable inferences in the plaintiff's favor.  Id.

> When a federal court reviews the sufficiency of a
> complaint, before the reception of any evidence either by
> affidavit or admissions, its task is necessarily a

---

[25]Plaintiffs' Response to Defendants Layton Energy Texas LLC and Layton Corporation's Motion to Dismiss Plaintiffs' Amended Class Action Complaint, Docket Entry No. 23, p. 3 ¶ 5.

[26]Id. at 3-4 ¶ 6.

> limited one.  The issue is not whether a plaintiff will
> ultimately prevail but whether the claimant is entitled
> to offer evidence to support the claims.

Swierkiewicz v. Sorema N.A., 122 S.Ct. 992, 997 (2002) (quoting

Scheuer v. Rhodes, 94 S.Ct. 1683, 1686 (1974)).  To avoid dismissal

a plaintiff must allege "enough facts to state a claim to relief

that is plausible on its face." Bell Atlantic Corp. v. Twombly,

127 S.Ct. 1955, 1974 (2007).  This "plausibility standard" requires

"more   than   an   unadorned,   the-defendant-unlawfully-harmed-me

accusation." Ashcroft v. Iqbal, 129 S.Ct. 1937, 1949 (2009).

"Where a complaint pleads facts that are 'merely consistent with'

a defendant's liability, it 'stops short of the line between

possibility and plausibility of entitlement to relief.'" Id.

(quoting Twombly, 127 S.Ct. at 1966).  Moreover, "[d]ismissal is

proper if the complaint lacks an allegation regarding a required

element necessary to obtain relief." Rios v. City of Del Rio, 444

F.3d 417, 421 (5th Cir. 2006) (quoting Campbell v. City of San

Antonio, 43 F.3d 973, 975 (5th Cir. 1995)).

    2.  Applicable Law

    Plaintiffs' claims for common law fraud and violation of the

Texas Securities Act are subject to the pleading requirements of

Federal Rule of Civil Procedure 9(b), which provides that "[i]n all

averments of fraud or mistake, the circumstances constituting fraud

or mistake shall be stated with particularity." Fed. R. Civ. P.

9(b).  Pleading fraud with particularity in this circuit requires

"[a]t a minimum . . . the particulars of time, place and contents of the false representations, as well as the identity of the person making the misrepresentation and what [that person] obtained thereby." Benchmark Electronics, Inc. v. J.M. Huber Corp., 343 F.3d 719, 724 (5th Cir.), modified on denial of rehearing on other grounds, 355 F.3d 356 (5th Cir. 2003) (quoting Tel-Phonic Services, Inc. v. TBS International, Inc., 975 F.2d 1134, 1139 (5th Cir. 1992)). "A dismissal for failure to plead fraud with particularity as required by Rule 9(b) is a dismissal on the pleadings for failure to state a claim." Southland Securities Corp. v. INSpire Ins. Solutions, Inc., 365 F.3d 353, 361 (5th Cir. 2004) (citing Shushany v. Allwaste, Inc., 992 F.2d 517, 520 (5th Cir. 1993)).

### 3.   Application of the Law to the Facts

For the reasons explained in § II.A.3(b)(1), above, the court has already concluded that the only claims asserted in plaintiffs' ACAC that the plaintiffs may bring directly as opposed to derivatively are the claims for common law fraud and violations of the Texas Securities Act arising from misrepresentations made before the plaintiffs purchased their units in the Funds. For the reasons explained below, the court concludes that these claims are subject to dismissal for failure to plead fraud with particularity as required by Rule 9(b).

The plaintiffs' claims for common law fraud are based on allegations that

48. Defendants made a representation to Plaintiffs that they would acquire oil and gas production with their monies and make them whole through the issuance of shares of Platinum Energy Solutions, Inc.

49. The representation was material.

50. The representation was false.

51. When Defendants made the representation, Defendants (1) knew the representation was false, or (2) made the representation recklessly, as a positive assertion, and without knowledge of its truth.

52. Defendants made the representation with the intent that Plaintiffs act on it.

53. Plaintiffs relied on the representation.

54. The representation caused Plaintiffs and class members injury.[27]

Under Texas law the elements of common law fraud are "a material misrepresentation, which was false, and which was either known to be false when made or was asserted without knowledge of its truth, which was intended to be acted upon, which was relied upon, and which caused injury."  Formosa Plastics Corp. USA v. Presidio Engineers and Contractors, Inc., 960 S.W.2d 41, 47 (Tex. 1998) (quoting Sears, Roebuck & Co. v. Meadows, 877 S.W.2d 281, 282 (Tex. 1994)).

The claims for violation of the Texas Securities Act are based on allegations that

72. Defendants Layton and Legler offered to sell a security to Plaintiffs.

---

[27]Plaintiffs' ACAC, Docket Entry No. 11, p. 17 ¶¶ 47-48.

73.   Plaintiffs purchased the security based on the representations made by Layton and Legler.

74.   Layton knew these representations to be untrue and/or omitted material facts necessary to make the statements not misleading.

75.   Legler aided Layton in selling the securities and knew of the untrue statements and/or material facts necessary to make the statements not misleading and failed to correct the untrue statements and/or to add material facts necessary to make the statements not misleading.  Thereby making Layton and Legler jointly and severally liable.

76.   Plaintiffs were damaged thereby and seek recision under the Texas Securities Act, Tex. Rev. Civ. Stat. Art. 581-33.[28]

Violation of the Texas Securities Act requires proof of sale of a security by means of an untrue statement of a material fact or omission to state a material fact necessary in order to make the statement made, in light of the circumstances under which they are made, not misleading, and tender of the securities.  See Vernon's Ann. Tex. Civ. Stat. art. 581-33(A)(2); Grotjohn Precise Connexiones International, S.A. v. JEM Financial, Inc., 12 S.W.3d 859, 867-68 (Tex. App. — Texarkana, 2000, no petition).

The factual allegations underlying the plaintiffs' claims for common law fraud and violation of the Texas Securities Act are that

[t]o entice potential investors to invest, Layton personally lead investors on tours of his pre-existing wells, met with them at various locations, including New York City, Florida, California, Minnesota, and North & South Dakota, claimed he owned a home in the River Oaks section of Houston, and invited them to "stay at his

[28]Id. at 18-19 ¶¶ 72-76.

-34-

house in Palm Beach, Florida". A search of the
Harris County Texas Appraisal District's and Palm Beach
County Florida's Appraisal District's websites reveals
that Daniel Layton does not own Homes in River Oaks or
Palm Beach. Layton merely rents these properties to
appear to investors and potential investors that he is a
mean of "means." Additionally, Layton personally
represented to the investors that they would get their
initial investment back within one year and make three to
five times their investment within three to five years.
At the time these statements were made, in 2008, Layton
knew these statements to be untrue, or in light of the
circumstances in which they were made, misleading.
Likewise, Legler aided Layton in the sale of the
partnership units (securities) to the investors[, and
that] Legler either knew of the falsity of the statements
made or was in reckless disregard for the truth of the
statements made."[29]

Plaintiffs also allege that

[o]n numerous occasions, Layton personally met with
investors and investors-to-be promising that investors
would see a return of their principle within one year
from the date of the funds' inception with a 300 to 500
percent return on their investment within three to five
years. Layton specifically made these promises to
plaintiffs and investors Levi Lindemann, Nahum Daniels
and Al Vanderlaan, among others. Initially, Layton would
respond to investors' inquiries regarding the status of
the funds and provide periodic letters to the investors
regarding their funds. Beginning in the summer of 2010,
Layton discontinued responding to investors' inquiries.
Prior to discontinuing responding to investors' requests
for information, Layton told Levi Lindemann that the
funds owed Layton money. Additionally, Layton personally
told plaintiffs and investors Levi Lindemann, Nahum
Daniels and Al Vanderlaan, in the Summer of 2010, among
others, that he was working on a fracking company deal
that was soon to go public (nominal defendant Platinum
Energy Solutions, Inc.) and that shares of this company
would be placed into the funds to make the investors
whole.[30]

---

[29]Id. at 9-10 ¶ 50.

[30]Id. at 12-13 ¶ 62.

Plaintiffs' allegations that Layton falsely represented that he owned homes in Houston, Texas, and Palm Beach, Florida, and falsely told investors that they would get their initial investment back within one year and that they would earn three to five times their investment within three to five years, are insufficient to satisfy the pleading requirements of Rule 9(b) because plaintiffs fail to allege facts showing exactly when and where these statements were made, to whom they were made, or why they were material to any individual's decision to purchase partnership units.  Nor do plaintiffs allege facts that if true would show that when these statements were made, Layton knew they were untrue or, in light of the circumstances in which they were made, misleading. Accordingly, the court concludes that plaintiffs' direct claims for common law fraud arising from misrepresentations that induced them to purchase their Fund units and for violation of the Texas Securities Act are subject to dismissal for failure to plead fraud with particularity as required by Rule 9(b).

### III.  **Conclusions and Order**

For the reasons explained in § II.A, the court concludes that the claims that the plaintiffs have asserted for common law fraud and violation of the Texas Securities Act (arising from misrepresentations made after plaintiffs purchased units in the Funds), conversion, violation of the Texas Theft Liability Act,

-36-

money had and received, breach of fiduciary duty, and negligence are claims that plaintiffs can only bring derivatively on behalf of the Funds, and that these claims are subject to dismissal without prejudice for lack of standing pursuant to Federal Rule of Civil Procedure 12(b)(1) because plaintiffs have failed to seek recovery on behalf of the Funds, and have failed to establish that they have satisfied either the federal or state law preconditions for bringing derivative claims.   For the reasons explained in §§ II.A.3(b)(1)(i) and II.B.3, the court concludes that the claims plaintiffs have asserted for common law fraud and violation of the Texas Securities Act arising from misrepresentations made before plaintiffs purchased units in the Funds are claims that plaintiffs have standing to bring directly, but that these claims are subject to dismissal with prejudice pursuant to Federal Rule of Civil Procedure 12(b)(6) because these claims sound in fraud and plaintiffs have failed to plead these claims with particularity as required by Federal Rule of Civil Procedure 9(b).   Accordingly, Defendants Layton Energy Texas LLC and Layton Corporation's Motion to Dismiss Plaintiffs' Amended Class Action Complaint (Docket Entry No. 16) is **GRANTED**, and Defendants Daniel Layton and Clarke Legler's Motion to Dismiss Plaintiffs' Amended Class Action Complaint and Joinder in Layton Energy Texas LLC and Layton Corporation's Motion to Dismiss (Docket Entry No. 18) is **GRANTED**.

-37-

For the reasons explained in § II.A.3(b)(2), plaintiffs' requests for leave to amend asserted in their responses to defendants' motions to dismiss (Docket Entry Nos. 22 and 23) are **DENIED.**

    **SIGNED** at Houston, Texas, on this 18th day of May, 2012.

SIM LAKE
UNITED STATES DISTRICT JUDGE